COURT OF APPEALS
DECISION
DATED AND FILED

August 13, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP766**

STATE OF WISCONSIN

Cir. Ct. No. 2019CF1468

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

LINDA SUE LA ROCHE,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Racine County: TIMOTHY D. BOYLE, Judge. *Affirmed*.

Before Neubauer, P.J., Gundrum, and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Linda Sue La Roche appeals from a judgment entered on jury verdicts convicting her of first-degree intentional homicide and hiding a corpse. La Roche also appeals from an order denying her postconviction motion for a new trial. *See* WIS. STAT. §§940.01(1), 940.11(2) (2023-24).[1] La Roche claims that her trial counsel were ineffective for failing to: (1) investigate and introduce an expert testimony about the cause and timeframe of the victim's death, (2) cross-examine witnesses about the victim's physical appearance on the day she left La Roche's house, and (3) investigate and present a third-party liability defense based on another allegedly-similar murder. La Roche further requests a new trial based on the cumulative effect of the alleged errors. We affirm.

## BACKGROUND

¶2     The State charged La Roche with the 1999 murder of Peggy Lynn Johnson. Johnson's brutally beaten body was found in a cornfield in Racine County, Wisconsin with multiple injuries at various stages in the healing process. Johnson's body went unidentified for twenty years, known only as Jane Doe throughout this time.

¶3     In 2019, La Roche reportedly bragged to a woman in Florida, where La Roche was then living, that La Roche had killed a woman in Illinois in 1999. La Roche had taken in Johnson because Johnson's mother had recently died, and Johnson had nowhere else to go. Johnson lived with La Roche and her family as a nanny and housekeeper for several years in Illinois before she died. Johnson was

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version.

last seen in the passenger seat of a car driven by La Roche, who claimed to have left an alive Johnson by the side of a rural road.

¶4      From the time Johnson left La Roche's home through the investigation into Johnson's death over 20 years later, La Roche provided differing accounts as to where she took Johnson on the day she was last seen, ranging from having taken Johnson to meet her grandmother at a nearby restaurant in Illinois, to taking her to a restaurant to meet some unknown person, to finally admitting that La Roche left Johnson at the side of a rural road somewhere in Wisconsin. Several of La Roche's children witnessed La Roche committing various acts of violent physical and verbal abuse against Johnson while Johnson lived with the family.

¶5      After less than two hours of deliberation at the close of a seven-day trial in 2022, the jury convicted La Roche of first-degree homicide and hiding a corpse for having beaten Johnson and left her body in a cornfield. The circuit court imposed consecutive sentences of life imprisonment, without the possibility of parole pursuant to WIS. STAT. § 973.014(1)(c), on the homicide count and five years of imprisonment for hiding a corpse.

¶6      La Roche filed a postconviction motion seeking a new trial on the ground of ineffective assistance of counsel. La Roche argued that trial counsels' failure to investigate and introduce expert testimony regarding the time and cause of Johnson's death, to cross-examine witnesses regarding Johnson's physical appearance when Johnson was last seen, and to advance a third-party liability defense were deficient and prejudicial. La Roche also filed a "**MOTION TO INCLUDE THIRD PARTY LIABILITY**," arguing that this case and a different 1999 murder case in Illinois were "similar" in "time," "place," and "circumstance"

because the bodies in both cases were discovered in 1999, in fields approximately 40 miles apart, and with some similar injuries.

¶7 The circuit court held a *Machner*[2] hearing at which both of La Roche's trial attorneys testified. The court held a subsequent hearing related to La Roche's third-party liability claim with testimony from Dr. Doug Kelley, who had performed the autopsy on Johnson, and Dr. Lindsey C. Thomas, who was apparently proffered as a competing expert to Dr. Kelley.[3] The court filed a written decision denying La Roche's motion for a new trial. It concluded that La Roche "failed to meet the burden of establishing that her trial counsel were ineffective." La Roche appeals, renewing the arguments from her postconviction motion.

## DISCUSSION

¶8 "Whether counsel was ineffective is a mixed question of fact and law." *State v. Balliette*, 2011 WI 79, ¶19, 336 Wis. 2d 358, 805 N.W.2d 334. "The factual circumstances of the case and trial counsel's conduct and strategy are findings of fact, which will not be overturned unless clearly erroneous; whether counsel's conduct constitutes ineffective assistance is a question of law, which we review" independently. *State v. Breitzman*, 2017 WI 100, ¶37, 378 Wis. 2d 431, 904 N.W.2d 93. To prove a claim of ineffective assistance of counsel, the defendant must satisfy two tests: first, that counsel's performance was deficient;

---

[2] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

[3] La Roche has failed to provide us with the transcript from the hearing on her third-party liability motion. "[I]n the absence of a transcript we presume that every fact essential to sustain the circuit court's decision is supported by the record." *Butcher v. Ameritech Corp.*, 2007 WI App 5, ¶35, 298 Wis. 2d 468, 727 N.W.2d 546 (2006).

and second, that counsel's deficient performance was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "If the defendant fails to satisfy either prong, we need not consider the other." *Breitzman*, 378 Wis. 2d 431, ¶37.

¶9 Based on our examination of the record and the circuit court's findings from the *Machner* hearing and the third-party liability hearing, we conclude that trial counsels' performance was not deficient because it was objectively reasonable. "Counsel's conduct is constitutionally deficient if it falls below an objective standard of reasonableness." *State v. Thiel*, 2003 WI 111, ¶19, 264 Wis. 2d 571, 665 N.W.2d 305. "The reasonableness of counsel's conduct must be evaluated 'on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Balliette*, 336 Wis. 2d 358, ¶23 (quoting *Strickland*, 466 U.S. at 690). We address La Roche's arguments in turn below.

¶10 First, La Roche argues deficient performance for trial counsels' failure to present a defense expert to testify about the cause and time of Johnson's death. She argues that "[i]nvestigating time of death, compared to the 46 days Johnson was missing would have shown that LaRoche could not have been responsible for the murder." However, La Roche fails to develop any argument to explain how she arrives at this conclusion. The postconviction court found that La Roche had shown neither "why [time and cause of death] would have been necessary for trial counsel to address" nor "how she was prejudiced by such failure." La Roche's arguments to this court on appeal are equally flawed.

¶11 At the *Machner* hearing, counsel testified that Johnson's cause of death was not an issue at trial and focusing on the cause of her death would not have comported with the defense strategy to show reasonable doubt that La Roche killed Johnson. The circuit court found that counsel supported its trial strategy

5

with "appropriate and targeted points through cross examination of the state's medical examiner." The court also found that trial counsel were "experienced trial attorneys … familiar with developing trial strategy," and concluded that their "strategy and representation on this issue was reasonable and appropriate and does not rise to the level of being ineffective."

¶12 Strategic trial decisions, when rational, do not constitute deficient performance. *Breitzman*, 378 Wis. 2d 431, ¶38. Here, the circuit court found the attorneys' decision to not call an expert witness or solicit testimony on a subject counsel believed was inconsequential to the jury's verdict to be a reasonable strategic choice that does not constitute deficient performance. *See id.*, ¶75 ("Reviewing courts should be 'highly deferential' to counsel's strategic decisions and make 'every effort ... to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" (citation omitted)). La Roche has failed to establish otherwise.

¶13 La Roche next argues ineffective assistance based on counsels' "fail[ure] to properly cross examine prosecution witnesses" about Johnson's "physical condition" or "physical appearance on the day she left." Contrary to La Roche's assertions, the circuit court concluded that this claim was "without merit," and explicitly found that "the record is replete with questioning and argument by trial counsel on this very topic." The court noted that trial counsel's closing argument thoroughly addressed Johnson's physical appearance and "counsel highlighted the holes in the state's case and showed that those who last saw [Johnson] did not see any injuries on her." The court found counsel thorough and strategic in its approach to this topic, concluding that "trial counsel was anything but ineffective on this issue." La Roche makes no challenge to the

court's factual findings, and the record supports both its findings and conclusion that counsel did not perform deficiently in this regard.

¶14     In sum, La Roche does not contest any of the circuit court's findings as to counsels' strategy or performance, nor does the record establish that the findings are clearly erroneous.  Accordingly, we accept the court's factual determinations and uphold its finding that trial counsel had valid strategic reasons for its challenged decisions discussed above.  *See Breitzman*, 378 Wis. 2d 431, ¶37.  Because counsels' decisions were reasonable, La Roche fails to establish deficient performance and, therefore, ineffective assistance of counsel, as to these alleged errors.

¶15     La Roche also makes an ineffectiveness claim based on trial counsels' failure to bring a third-party perpetrator defense to point the finger at the unknown perpetrator of another murder around the time of Johnson's.  *See State v. Denny*, 120 Wis. 2d 614, 623-24, 357 N.W.2d 12 (Ct. App. 1984).  To succeed on a *Denny* motion, a defendant must establish that there was a legitimate tendency that another person committed the crime by showing a third person's motive, opportunity, and direct connection to the crime.  *See State v. Wilson*, 2015 WI 48, ¶3, 362 Wis. 2d 193, 864 N.W.2d 52.  An offer of proof in support of such a motion is insufficient if it merely "'affords a possible ground of suspicion against another person[.]'" *Id.*, ¶51 (citation omitted).

¶16     La Roche argues that her trial counsel had grounds for a motion to admit evidence from the Illinois case based on her claim that the female victim's body in that case was found several months after Johnson's body, was disposed of in a cornfield like Johnson's, and had "u-shaped markings" that were "similar" to some of Johnson's many injuries.  However, as the postconviction court properly

found, La Roche failed to establish: (1) the existence of a person with a motive to commit the homicide charged here; or (2) that such a person had an opportunity to commit the murder; or (3) a legitimate tendency to connect such a person to the acts underpinning the charges alleged in the complaint. Indeed, La Roche did not suggest an identity for the alleged third-party perpetrator. Thus, the existence of the other 1999 murder provides at most "a possible ground of suspicion against" an unidentified person, which is insufficient to sustain a ***Denny*** motion. *See* ***Wilson***, 362 Wis. 2d 193, ¶83.

¶17    Accordingly, La Roche failed to make a showing that her trial counsel performed deficiently by forgoing a ***Denny*** motion. An attorney does not perform deficiently by failing to file a motion that would have been denied. ***State v. Wheat***, 2002 WI App 153, ¶23, 256 Wis. 2d 270, 647 N.W.2d 441.

¶18    Finally, La Roche asks this court to order a new trial because, she argues, the cumulative effect of the errors discussed above prejudiced her; she asserts that the result of the trial would have been different absent these errors. Since we have rejected all of La Roche's alleged arguments, we decline to order a new trial.[4] *See* ***Mentek v. State***, 71 Wis. 2d 799, 809, 238 N.W.2d 752 (1976) ("Zero plus zero equals zero.").

---

[4] We note that La Roche makes a passing request asking this court to order DNA testing on scrapings found under Johnson's fingernails. However, because La Roche does not develop any argument showing why this would matter to her case or further pursue this request, we decline to order DNA testing or to discuss this issue further.

**CONCLUSION**

¶19  For the foregoing reasons, we conclude that La Roche has failed to establish ineffective assistance of trial counsel, and a new trial is not warranted. Accordingly, we affirm the judgment of conviction and the order denying postconviction relief.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.